# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Carolyn Cole and Molly Hennessy-Fiske, | Case No. 21-cv-1282 (PJS/JFD) |
| Plaintiffs, | |
| v. | **ORDER** |
| John Does 1, 2, and 3, acting in their individual capacities as troopers or other sworn officers of the Minnesota State Patrol; Joseph Dwyer, acting in his individual capacity as a Captain of the Minnesota State Patrol; and Timothy Salto, acting in his individual capacity as a Lieutenant of the Minnesota State Patrol, | |
| Defendants. | |

This matter is before the Court on Plaintiffs Carolyn Cole and Molly Hennessy-Fiske's Motion for Leave to File Amended Complaint (Dkt. No. 34). The Court held a hearing on the motion on April 7, 2022, at which Andrew Noel, Esq., appeared for Plaintiffs Carolyn Cole and Molly Hennessy-Fiske; and Joseph Weiner, Esq., appeared for Defendants Joseph Dwyer and Timothy Salto.[1] Defendants oppose the motion on the basis of futility. As set forth fully below, the Court finds that some amendments are futile and some are not. Accordingly, the motion is granted in part and denied in part.

---

[1] The original claims against Dwyer and Salto were dismissed without prejudice on December 1, 2021. (Order at 26, Dkt. No. 30.)

I.  **Background**

Carolyn Cole and Molly Hennessy-Fiske are members of the press. (Compl. ¶ 2, Dkt. No. 1.) They traveled to Minnesota in late May 2020 to report on the civil unrest and law enforcement's response after the death of George Floyd. (*Id.* ¶¶ 36, 39.) Cole and Hennessy-Fiske allege that on May 30, 2020, Minnesota State Patrol troopers assaulted them with pepper spray and blunt-impact projectiles, despite them showing their press credentials and telling the troopers they were press. (*Id.* ¶¶ 74–75, 79, 82, 86.)

Cole and Hennessy-Fiske initiated this action on May 25, 2021, asserting that their constitutional rights were violated by the troopers and the troopers' supervisors, Minnesota State Patrol Captain Joseph Dwyer and Minnesota State Patrol Lieutenant Timothy Salto. (*Id.* ¶ 2.) Cole and Hennessy-Fiske brought four claims for relief: Count I for Fourth and Fourteenth Amendment violations against John Doe 1; Count II for Fourth and Fourteenth Amendment violations against John Does 2 and 3; Count III for First and Fourteenth Amendment violations against John Does 1, 2, and 3; and Count IV for supervisory liability against Dwyer and Salto.

Dwyer and Salto moved to dismiss the supervisory liability claim. The Honorable Patrick J. Schiltz, United States District Judge, granted the motion and dismissed the claim without prejudice. (Order at 26, Dec. 1, 2021, Dkt. No. 30 ("Dismissal Order").) Judge Schiltz rejected Dwyer and Salto's argument that they were entitled to qualified immunity because John Does 1, 2, and 3 were entitled to qualified immunity. (*Id.* at 16.) Based solely on the allegations in the Complaint and solely for the purpose of ruling on the motion to

dismiss, Judge Schiltz found that the John Doe Defendants were not entitled to qualified immunity. (*Id.*)

With respect to the substance of the supervisory liability claim, Judge Schiltz described two ways that a plaintiff can succeed on this claim: "First, a supervisor can be held liable 'if he directly participated in the constitutional violation' committed by someone he supervised. . . . Second, a supervisor can be held liable 'if his failure to train or supervise the offending actor caused the deprivation.'" (*Id.* at 17 (citation omitted).) Cole and Hennessy-Fiske did not plausibly allege a direct participation theory of supervisory liability because they alleged only that Dwyer and Salto created an environment that fostered the use of force, and they did not allege any instance before May 30, 2020, when Dwyer or Salto either did not require a trooper to report the use of force or did not hold a trooper accountable for the wrongful use of force. (*Id.* at 18–19.) Further, Cole and Hennessy-Fiske alleged only "in a conclusory way that Dwyer and Salto expressly authorized or approved the Doe defendants' use of force." (*Id.* at 19.) Judge Schiltz explained that "ordering or directing an inferior officer to commit an unconstitutional act would likely constitute direct participation in that act by a supervisor," but there was no factual basis for Cole and Hennessy-Fiske's conclusory allegation. (*Id.* at 20.) As to the failure-to-train-or-supervise theory of supervisory liability, Judge Schiltz found that Cole and Hennessy-Fiske did not adequately plead the first element of the claim: that Dwyer and Salto were "on 'notice of a pattern of unconstitutional acts committed by subordinates.'" (*Id.* at 22 (quoting *Perkins v. Hastings*, 915 F.3d 512, 524 (8th Cir. 2019) (citation omitted)).)

3

Cole and Hennessy-Fiske timely filed a motion for leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a). They seek to make the following amendments:

1. Replace John Doe Defendants 1, 2, and 3 with 74 named members of the Minnesota State Patrol Mobile Response Team ("MRT") "MSP-1" Team and Special Response Team ("SRT"). (Proposed Am. Compl. at 1–2, ¶¶ 14, 16, 18, 20, 23, 27, Dkt. No. 37.)
2. Add ten named "Supervisor Defendants," including Salto and Dwyer. (*Id.* at 1, ¶¶ 2, 11–13, 15, 17, 19, 21–22, 25.)
3. Divide the named Defendants into three groups: (1) the "Assaulter Troopers," who allegedly were armed with the chemical munitions and riot control weapons used on Cole and Hennessy-Fiske; (2) the "Cover Troopers," who allegedly provided cover or "lethal overwatch" to the Assaulter Troopers during the assault; and (3) the "Supervisor Defendants," who allegedly were the supervisors present during the assault. (*Id.* ¶¶ 73–77.)
4. Add allegations about events before and on May 30, 2020. (*Id.* ¶¶ 52-77, 91–97, 104-05, 116, 122.)
5. Add factual allegations about Dwyer's direct participation. (*Id.* ¶¶ 61, 65–72, 90, 93, 97, 104–05, 143–46.)
6. Add a claim against the "Supervisor Defendants" under *Baude v. Leyshock*, 23 F.4th 1065 (8th Cir. 2022). (Proposed Am. Compl. at 44, ¶¶ 214–24.)
7. Re-allege against Dwyer a claim for supervisory liability under a direct participation theory. (*Id.* at 47, ¶¶ 225–38.)
8. Modify the counts so that Count I is against the "Assaulter Troopers" for the use of excessive force; Count II is against the "Cover Troopers" for the failure to intervene; Count III is against the "Assaulter Troopers" for violating Plaintiffs' First Amendment rights; Count IV is against the "Supervisor Defendants" for supervisory liability under *Baude*; and Count V is against Dwyer for supervisory liability under a direct participation theory. (*Id.* ¶¶ 192–238.)

(*See* Pls.' Mem. at 9, Dkt. No. 36.)[2] Defendants oppose many of the proposed amendments as futile.

---

[2] The Court has provided more specificity about the requested amendments than what was outlined generally in Cole and Hennessy-Fiske's supporting memorandum.

## II. Legal Standards

Leave to amend a pleading is governed by Federal Rule of Civil Procedure 15(a)(2), which provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." But the right to amend is not absolute. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). Leave to amend may be denied for "compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Id.* (citing *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005)).

A proposed amendment to a complaint is futile if "the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Cornelia I. Crowell GST Tr. v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008). Rule 12(b)(6) requires dismissal when a complaint fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff need not plead "detailed factual allegations," but mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* For a claim to be facially plausible, the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In applying this standard, the Court accepts the factual allegations as true and views them most favorably to the plaintiff. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013).

### III. Discussion

#### A. The 74 Proposed Named Trooper Defendants

Cole and Hennessy-Fiske propose replacing Defendants John Does 1, 2, and 3 with 74 named members of the Minnesota State Patrol MRT "MSP-1" Team and SRT. Defendants oppose the amendment as futile because the proposed amended complaint does not include a single allegation that any particular trooper personally engaged in unconstitutional conduct and does not give fair notice to any trooper of the claim against him or her or the supporting grounds for the claim.

The allegations mentioning the 74 individuals who are proposed to be added as named defendants consist of their names; their status as residents of Minnesota; their participation in the MRT "MSP 1" Team on May 30, 2020, as a Chemical Agent Response Team ("CART") trooper, squad member, or SRT trooper; and their presence when Minnesota State Patrol troopers "encountered" Cole and Hennessy-Fiske on May 30, 2020. (Proposed Am. Compl. at 1–2, ¶¶ 14, 16, 18, 20, 23, 27.) The proposed amendments do not allege which of the named troopers were personally involved in the alleged constitutional violations, which of the named troopers were "Assaulter Troopers" or "Cover Troopers," or what any specific named trooper did.

"[Section] 1983 liability is personal." *Doran v. Eckold*, 409 F.3d 958, 965 (8th Cir. 2005) "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). A complaint that "does not establish the direct responsibility of any specific defendant" means that the plaintiff "cannot establish the liability of any specific defendant under

§ 1983." *See Prouty v. Johnson*, No. 21-CV-2438 (PJS/DTS), 2021 WL 5235094, at *2 (D. Minn. Nov. 10, 2021).

Cole and Hennessy-Fiske argue they are not required at the pleading stage to specifically identify which troopers used excessive force, citing *White v. Jackson*, 865 F.3d 1064 (8th Cir. 2017), and *Burbridge v. City of St. Louis*, 2 F.4th 774 (8th Cir. 2021). In *White*, the Eighth Circuit Court of Appeals considered the argument that a defendant was entitled to qualified immunity because the plaintiff could not identify which officer used excessive force. 865 F.3d at 1080–81. The court agreed that a § 1983 plaintiff had to show each defendant's personal involvement, but "[t]hat [did] not mean however that a § 1983 excessive force plaintiff must be able to personally identify his assailants to avoid summary judgment." *Id.* at 1081.

The Court finds that *White* does not apply to the situation at hand. To begin, the procedural posture of this case is a motion for leave to amend the complaint, not summary judgment. No claim will be dismissed now if Cole and Hennessy-Fiske do not personally identify the troopers who allegedly assaulted them. The existing Complaint already alleges an excessive force claim against unnamed officers John Does 1, 2, and 3. If Cole and Hennessy-Fiske's motion to amend is denied, the excessive force claim will remain in the case, and the John Doe defendants will remain as placeholders for any troopers who were personally involved in the alleged constitutional violations. Furthermore, discovery is ongoing, and Cole and Hennessy-Fiske believe they will be able to identify the troopers who were personally involved in the alleged assaults during discovery.

The Court appreciates that Cole and Hennessy-Fiske filed the motion to amend when they did—before they could ascertain the identities of John Does 1, 2, and 3—to meet the deadline set in the pretrial scheduling order. But Rule 15(a) allows leave to amend when justice so requires. Without prejudging the merits of any future motion, the Court observes that ascertaining the identities of unnamed defendants can provide reason to seek leave to amend the complaint even after the expiration of the deadline. *Jones v. Faulkner Cty.*, 609 F. App'x 898, 900 (8th Cir. 2015) (concluding court erred by denying leave to amend to identify unnamed defendants when the defendants would not be prejudiced, even after discovery had closed and a summary judgment motion had been filed).

*Burbridge* does not apply for reasons similar to *White*. The procedural posture and issue in that case was whether "a § 1983 excessive force plaintiff must be able to personally identify his assailants to avoid summary judgment." *Burbridge*, 2 F.4th at 782. That is not the procedural posture or issue here. Summary judgment is not at stake, and the excessive force claim and John Doe Defendants will remain in the case if this aspect of Cole and Hennessy-Fiske's motion for leave to amend is denied. Discovery is ongoing, and Cole and Hennessy-Fiske can stipulate or otherwise seek leave to amend the Complaint once they ascertain the identities of the John Doe Defendants through discovery.

Cole and Hennessy-Fiske next argue that each of the 74 proposed named troopers are necessarily either an "Assaulter Trooper" or a "Cover Trooper" because all 74 were members of the MRT "MSP 1" Team or the SRT, and thus, each of the 74 troopers either committed excessive force or failed to stop it.

The allegations related to the failure-to-intervene claim against the "Cover Troopers" are pleaded at paragraphs 75–76, 116, 122, and 200–201 of the Proposed Amended Complaint (*see* Pls.' Mem. at 13), among others. The "Cover Troopers" allegedly "provided 'lethal overwatch' or 'cover' for the Assaulter Troopers, as the Assaulter Troopers approached and assaulted" Cole and Hennessy-Fiske. (Proposed Am. Compl. ¶ 75.) The "Cover Troopers" allegedly also "stood idly by, personally observing the Assaulter Troopers' onslaught of the trapped press group." (*Id.* ¶ 122.) None of the "Cover Troopers" intervened to stop the alleged excessive force. (*Id.* ¶ 116.)

A law enforcement officer "may be liable for an unreasonable seizure under the Fourth Amendment if he fails to intervene to prevent the unconstitutional use of excessive force by another official." *Krout v. Goemmer*, 583 F.3d 557, 565 (8th Cir. 2009). An officer has the duty to intervene when "the officer is aware of the abuse and the duration of the episode is sufficient to permit an inference of tacit collaboration." *Id.* The officers who failed to intervene in *Krout* were at the scene of the assault, "standing around, not saying or doing anything to stop the attack." *Id.* at 566. The duration of the assault was about five minutes. *Id.*

The Court does not agree that the 74 proposed named troopers' status as members of the MRT "MSP 1" Team and SRT creates a reasonable inference that they must have either used excessive force on Cole or Hennessy-Fiske or failed to prevent the use of excessive force on Cole or Hennessy-Fiske. *See Street v. O'Toole*, No. 4:19-CV-2590 CDP, 2021 WL 677909, at *4 (E.D. Mo. Feb. 22, 2021) (finding officers cannot be liable merely because they were employed by the police department during the alleged constitutional

9

violations), *quoted with approval in Faulk v. City of St. Louis*, 30 F.4th 739, 745 (8th Cir. 2022). Granted, the proposed amended complaint contains more factual allegations than that the 74 troopers were employed by the Minnesota State Patrol. But *Street*'s corresponding reasoning applies here: "[L]iability under § 1983 requires proof of a causal link between *each* defendant and the *specific wrongs* that defendant committed. Put differently, asserting broad, sweeping allegations that a group of defendants committed constitutional misconduct is not sufficient to satisfy plaintiffs' pleading obligations as to each defendant within that group." *Id.* (emphases in *Street*).

The proposed amended complaint does not allege that *each* "Assaulter Trooper" used a chemical munition or projectile on Cole or Hennessy-Fiske or that *each* "Cover Trooper" observed but failed to stop an assault of Cole or Hennessy-Fiske. Nor, given the number of proposed named trooper defendants, would it be reasonable to infer they did. The proposed amended complaint contains no allegations of any one of the 74 proposed named troopers' involvement that "establish a causal link between [the named trooper] and the specific wrongs defendants allegedly committed." *See Faulk*, 30 F.4th at 745.

Finally, Cole and Hennessy-Fiske have not pleaded facts plausibly suggesting that *each* "Cover Trooper" was aware of the alleged excessive force used on Cole and Hennessy-Fiske or that the duration of the assaults was long enough to create an inference of unspoken collaboration involving *each* "Cover Trooper." *See Krout*, 583 F.3d at 565. Cole and Hennessy-Fiske do allege that the "Cover Troopers" stood by idly and observed the alleged excessive force used on the "trapped press group." (Proposed Am. Compl. ¶ 122.) But it is not reasonable to infer that *each* "Cover Trooper" who observed the press

group as a whole was aware of the alleged excessive force used specifically on Cole or Hennessy-Fiske and could have intervened to stop it. Allegations and photos in the proposed amended complaint depict a large area in which the troopers were deployed, consisting of a block of multi-lane streets, sidewalks, a Metro Transit garage, and the Minneapolis Police Department Fifth Precinct building. (Proposed Am. Compl. ¶¶ 84, 86.) As the troopers emerged from the Fifth Precinct building, they were surrounded by "a tactical blue smoke screen" and walking in tight formation (*Id.* ¶¶ 88–89), either or both of which would have obscured some troopers' vision. When the "Assaulter Troopers" arrived at the intersection of Nicollet Avenue and 32nd Street, they "broke off from other officers and headed directly for the press group—traversing the boulevard and sidewalk to get to them." (*Id.* ¶ 106.) It is not plausible that all of the "Cover Troopers" would have followed and observed what happened next. Cole and Hennessy-Fiske were pressed against the transit garage when the "Assaulter Troopers" used pepper spray and projectiles on them. (*Id.* ¶¶ 108, 114.) Given the size of the area, the smoke, the total number of troopers, other people at the scene, the location of the press members, and the chaos created by the use of pepper spray and projectiles, it would not be reasonable to infer that all of the other troopers along the block could, and did, see the alleged assaults on Cole and Hennessy-Fiske or could have intervened.

Accordingly, the Court denies Cole and Hennessy-Fiske's request to replace John Doe Defendants 1, 2, and 3 with 74 named members of the Minnesota State Patrol MRT "MSP-1" Team and SRT. However, the Court will grant Cole and Hennessy-Fiske's request to use the terms "Assaulter Troopers" and "Cover Troopers" in the amended

11

complaint. The Court will also grant leave to modify the counts so that Count I is against unnamed "Assaulter Troopers" for the use of excessive force and Count II is against unnamed "Cover Troopers" for the failure to intervene. If Cole and Hennessy-Fiske wish to add additional Doe Defendants as placeholders to represent the new trooper designations or for the failure-to-intervene claim, the Court grants leave to do so.

### B.      The Ten Proposed Named "Supervisor Defendants"

Cole and Hennessy-Fiske propose adding ten named "Supervisor Defendants," including Salto and Dwyer, as defendants. The Court denies leave to amend to add these named defendants (except Dwyer, for reasons discussed in Part III.D. below) because, like the 74 proposed named trooper defendants, Cole and Hennessy-Fiske have not alleged facts showing each proposed named supervisor's personal involvement.

The allegations mentioning the "Supervisor Defendants" include their names; their role as supervisors over the MRT "MSP 1" Team, CART, or SRT when those teams encountered Cole and Hennessy-Fiske on May 30, 2020; their authorization of the use of munitions; their knowledge that members of the press were not violating the curfew; their failure to stop the "Assaulter Troopers from targeting the press group"; that they "stood within view of the assault" of the press group; that they "observed or intended the use of excessive force" and did not intervene to stop it; that they "issued orders allowing their subordinates to use excessive force against the press group"; and that they knew of and sanctioned the conduct of the "Assaulter Troopers." (Proposed Am. Compl. at 1, ¶¶ 2, 10–13, 15, 17, 19, 21–22, 25, 97, 116, 122, 217–18, 220.) Additional, specific allegations are made against Dwyer.

12

Without deciding whether the allegations state a claim under *Baude v. Leyshock*, 23 F.4th 1065 (8th Cir. 2022), which the Court will address below, the Court finds that the allegations against the "Supervisor Defendants," excepting Dwyer, do not establish the direct responsibility, or personal involvement, of each proposed named supervisor for intending the use of excessive force on Cole and Hennessy-Fiske or failing to intervene and prevent it. Except for Dwyer, the relevant allegations describe the actions of the proposed "Supervisor Defendants" as a group, without attributing any particular action or inaction to any particular individual. In addition, the allegations describe the conduct of the named supervisors toward the press group as a whole, not specifically toward Cole or Hennessy-Fiske. "[B]road, sweeping allegations that a group of defendants committed constitutional misconduct is not sufficient to satisfy plaintiffs' pleading obligations as to each defendant within that group." *Street*, 2021 WL 677909, at *4.

Accordingly, the Court denies Cole and Hennessy-Fiske's request to name the nine supervisors other than Dwyer as "Supervisor Defendants." The Court will grant, however, the request to use the term "Supervisor Defendants" in the amended complaint. If Cole and Hennessy-Fiske wish to add additional Doe Defendants to represent the new "Supervisor Defendants" designation, the Court grants leave to do so.

    **C.**    **The New Excessive Force Claim Against the "Supervisor Defendants"**

Plaintiff proposes to add a new claim against the "Supervisor Defendants" under *Baude v. Leyshock*, 23 F.4th 1065 (8th Cir. 2022). In *Baude*, the plaintiff alleged that "supervisory officers observed or intended the use of excessive force, and no one intervened to halt it." *Id.* at 1074. He also "alleged that the supervisors issued orders

13

allowing their subordinates to use excessive force against an allegedly peaceful crowd." *Id.* Finally, Baude alleged: "the coordinated actions of the officers in circling the assembly into the kettle and the systematic disbursement of chemical agents . . . made it clear that these tactics were planned and that senior officials of the SLMPD [Saint Louis Metropolitan Police Department] not only had notice of but actually sanctioned the conduct of" the officers. *Id.* (cleaned up) The court considered whether these allegations were sufficient to overcome the supervisory officers' assertion of qualified immunity. *Id.* Acknowledging there is no "respondeat superior or supervisor liability" for § 1983 claims, the *Baude* court quoted authority from the failure-to-intervene context: It is "clearly established that an officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment." *Id.* (quoting *Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009)). "Supervisory officers who act with deliberate indifference toward the violation, or, in other words, are aware that their subordinates' actions create a substantial risk of serious harm, may be liable if they fail to intervene to mitigate the risk of harm." *Id.* (cleaned up). The court found Baude's allegations sufficient to plead a claim of excessive force against the supervising officers. *Id.*

In this case, Cole and Hennessy-Fiske propose to add allegations similar to those in *Baude*. The proposed amended complaint alleges, *inter alia*, that "Supervisor Defendants" "observed or intended the use of excessive force, and no one intervened to halt it." (Proposed Am. Compl. ¶ 217.) Further, the "Supervisor Defendants" were present and saw the alleged excessive force against the press group; they also "issued orders allowing their

14

subordinates to use excessive force against the press group." (*Id.* ¶¶ 217–18.) The "Supervisor Defendants" also allegedly engaged in a "coordinated effort—displayed by the troopers' tactical line, use of a smoke screen, and systemic discharge of chemical Agents" that confirmed the subordinate troopers were following their commands. (*Id.* ¶ 219.) The coordinated effort allegedly demonstrated that the Supervisor Defendants were on notice of and sanctioned the allegedly unconstitutional conduct. (*Id.* ¶ 220.) As a result of the Supervisor Defendants' conduct, Cole and Hennessy-Fiske were injured. (*Id.* ¶ 222.) These allegations against the Supervisor Defendants, considered with the other allegations of excessive force against the "Assaulter Troopers" and "Cover Troopers," state a facially plausible claim for a failure to intervene, under *Baude*.

The Court therefore grants Cole and Hennessy-Fiske leave to plead a failure-to-intervene claim against the "Supervisor Defendants," but the proposed label "supervisory liability" is a misnomer. *Baude* allowed an excessive-force claim based on an alleged failure to intervene against the supervising officers, and that is what the Court allows here. The Court also grants leave to modify the counts so that Count IV is against the Supervisor Defendants for excessive force under *Baude*.

       **D.**     **Realleged Claim for Supervisory Liability Against Dwyer**

Cole and Hennessy-Fiske ask to reallege a supervisory liability claim against Dwyer under a direct participation theory. They propose adding the following factual allegations, among others, as support for the claim. After learning of a change in the State Patrol's "posture" toward the civil unrest, Dwyer "hatched a plan to 'execute a mass arrest'" on May 30, 2020. (Proposed Am. Compl. ¶¶ 64–65.) He decided to base the arrests on curfew

15

violations. (*Id.* ¶ 65.) The intent of the plan was "to clear the entire landscape." (*Id.* ¶ 67.) "Dwyer's order to 'clear the area' regardless of whether the curfew order exempted press was in contravention of the constitutional mandates of the First and Fourth Amendments." (*Id.* ¶ 145.) Dwyer's plan was communicated to the Supervisor Defendants, then to the subordinate troopers. (*Id.* ¶¶ 68–69.) On May 30, Dwyer had direct command of the troopers and other officers deployed to the Fifth Precinct area to execute his plan to clear the area. (*Id.* ¶¶ 69, 228.) A "throng of troopers," under the command of the Supervisor Defendants, executed Dwyer's "mass arrest" plan. (*Id.* ¶ 93.) Dwyer's plan allegedly called for the use of chemical munitions. (*Id.* ¶ 93.) He "allowed and facilitated" the use of excessive force by commanding the subordinate troopers to clear the area with munitions. (*Id.* ¶¶ 70, 232.) "Members of the media like [Cole and Hennessy-Fiske] were caught in the crosshairs of the force and chemical munitions used by troopers executing Dwyer's plan." (*Id.* ¶ 72.)

> In order to hold a supervisor liable under the "direct participation" theory, a plaintiff must prove that the supervisor was personally involved in the constitutional violation. *See Buckley v. Hennepin Cty.*, 9 F.4th 757, 764 (8th Cir. 2021); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995); *see also Marsh v. Phelps Cty.*, 902 F.3d 745, 754 (8th Cir. 2018) (where defendants neither "ordered or directed" an inferior officer to violate the plaintiff's rights, "their alleged liability cannot be based on direct participation"); *Parrish*, 594 F.3d at 1002 (same).

(Dismissal Order at 17.)

One reason articulated by Judge Schiltz in granting Dwyer's motion to dismiss the direct-participation, supervisory-liability claim was that Cole and Hennessy-Fiske did not adequately allege that Dwyer directly participated in the use of force. (*Id.* at 18–19.) A

16

supervisor's personal involvement may be established if the supervisor was "involved in 'creating, applying, or interpreting a policy' that gives rise to unconstitutional conditions." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014). The proposed amended complaint alleges more than the initial Complaint's allegation that Dwyer created an environment where the arbitrary use of force was allowed without consequences. (*Cf.* Compl. ¶ 178, Dkt. No. 1; Dismissal Order at 18.) Cole and Hennessy-Fiske propose to allege that Dwyer created a plan for a mass arrest of press members based on curfew violations, regardless of the press's First and Fourth Amendment rights. Further, Dwyer allegedly directly commanded troopers and other officers to execute his plan to clear the area with chemical munitions, which resulted in excessive force used on the press members, including Cole and Hennessy-Fiske. The Court finds that the new allegations support a reasonable inference of Dwyer's direct, personal involvement in the alleged constitutional violations.

The new allegations also solve another problem identified in the Dismissal Order: that Cole and Hennessy-Fiske's original allegations of Dwyer's express authorization or approval of the troopers' use of force were conclusory. (*See* Dismissal Order at 20.) The allegations summarized above provide a factual basis for the conclusion that Dwyer ordered or directed a subordinate trooper to commit an unconstitutional act. Consequently, for both these reasons, the Court grants Cole and Hennessy-Fiske leave to add factual allegations about Dwyer's direct participation and to reallege against Dwyer a claim for supervisory liability under a direct participation theory.

### E. New Factual Allegations About Events Before and on May 30, 2020

Cole and Hennessy-Fiske seek leave to add factual allegations about events before and on May 30, 2020. (Proposed. Am. Compl. ¶¶ 52-77, 91–97, 104-05, 116, 122, 143–46.) Defendants did not oppose this request, and the Court grants leave to add the allegations.

### F. Qualified Immunity

Defendants argue in a footnote on the final page of their memorandum that the Supervisor Defendants are entitled to qualified immunity. (Defs.' Mem. Opp'n at 20 n.4, Dkt. No. 42.) Defendants contend that Cole and Hennessy-Fiske's exposure to "to less lethal munitions during the mass arrest plan was entirely consistent with the holding in *Lawyer* that *non-intentional* exposure to pepper spray does not rise to the level of a constitutional violation." (*Id.* (citing *Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1105 (8th Cir. 2004)) (emphasis added).) But Cole alleges that she was "*intentionally* sprayed with pepper spray directly into her left eye and ear." (Proposed Am. Compl. ¶ 118) (emphasis added).) In addition, *Lawyer* did not address the use of projectiles. Consequently, Defendants have not shown that they are entitled to qualified immunity under *Lawyer*.

Defendants also argue that the Supervisor Defendants could not have "reasonably understood that they would commit a constitutional violation of the media 'caught' between troopers and the subjects of the mass arrest." (Defs.' Mem. Opp'n at 20 n.4.) Defendants cite no authority for this proposition, however, and the Court believes the

argument must be fully developed and briefed before qualified immunity may be correctly determined.

## IV. Conclusion

Accordingly, based on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs Carolyn Cole and Molly Hennessy-Fiske's Motion for Leave to File Amended Complaint (Dkt. No. 34) is **GRANTED IN PART** and **DENIED IN PART**, as set forth fully herein. Cole and Hennessy-Fiske shall file an Amended Complaint that conforms to the scope of leave to amend granted herein within 14 days.

Dated:   May 5, 2022    *s/ John F. Docherty*
                        JOHN F. DOCHERTY
                        United States Magistrate Judge