UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Carolyn Cole and Molly Hennessy-Fiske, | Court File No. 21-cv-1282 (PJS/DLM) |
| Plaintiffs, | |
| vs. | |
| Ben Lockman and Michael Eck, acting in their individual capacities as troopers or other sworn officers of the Minnesota State Patrol; and Joseph Dwyer and Jason Engeldinger, acting in their individual capacities as Captains of the Minnesota State Patrol, | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

Plaintiffs' opposition is long on rhetoric but short on disputed material facts. For purposes of Defendants' summary judgment motion, it is undisputed that:

- The only use of force that impacted Plaintiffs and is attributed to any Defendant is the OC spray that hit Cole (Pls.' Mem at 25-37);

- Hennessey-Fiske's excessive force claims fail because there is no evidence Defendants deployed any force that struck her (*id.*);

- Eck and Lockman deployed OC spray only once and the purpose was to get the individuals hiding in the alcove to move north (Dwyer Ex. 2, 3; Eck Decl. ¶4; Lockman Decl. ¶3; Eck Dep. at 217; Lockman Dep. at 158-59);

- It is dangerous to law enforcement to allow unidentified individuals behind the skirmish line (Engeldinger Dep. at 175; Eck Dep. at 158-59; Dwyer Decl. ¶8; Frazer Report[1] ¶¶35, 56.);

---

[1] Plaintiffs cite the report of their expert to make conclusory claims about the legality of Defendants' use of force. *See* Pls.' Mem. at 32, 33, 34, 49. The Court should exclude opinion testimony if it is so couched in legal conclusions that it supplies the fact finder with no information other than what the witness believes the verdict should be. *Hogan v.*

- No one who was present at the Fifth Precinct or reviewed the videos and still photos, including Plaintiffs, has been able to identify most members of Plaintiffs' group were members of the media (Dwyer Dep. at 223; Eck Dep. at 70, 126, Engeldinger Dep. at 165; Lee Dep. at 108; Lockman Dep. at 134, 145; VanDenEinde Dep. at 27, 110; Cole Dep. at 190-210, Exs. 10-15, 17-19; Hennessey-Fiske Dep. at 222-42, Exs. 48-57; Dwyer Exs. 2, 3);

- Neither Dwyer nor Engeldinger saw Eck or Lockman deploy OC spray or gave them orders to do so (Dwyer Dep. at 229-30; Engeldinger Decl. ¶6); and

- None of the individuals arrested the evening of May 30 were press (Dwyer Decl. ¶11).

After days of rioting and looting, Defendants arrived outside the Fifth Precinct to disperse the crowd. Once dispersal orders were given and law enforcement marched north, no one who left the area or was not hiding in an alcove next to the law enforcement line was struck by OC spray. The Court should dismiss Plaintiffs' claims with prejudice.

## ARGUMENT

### I. EXCESSIVE FORCE

#### A. Eck's and Lockman's Use of OC Spray to Move the Hiding Individuals Was Not a Seizure.

The relevant inquiry to determine the viability of Plaintiffs' excessive force claims is whether Eck or Lockman deployed force to restrain Plaintiffs or for some other purpose. *Torres v. Madrid*, 141 S. Ct. 989, 998 (2021). The undisputed evidence is that the reason they deployed OC spray was to get the individuals hiding in the alcove to move north so as to not pose a threat to law enforcement. As Plaintiffs correctly note, an individual is

---

*AT&T*, 812 F.2d 409, 411 (8th Cir. 1987). More importantly, however, unlike Mr. Frazer, Plaintiffs' expert never opined on law enforcement practices related to allowing individuals behind police lines.

seized when the "application of force was a knowing and willful act that terminated [plaintiff's] freedom of movement." Pls.' Mem at 28-29 (quoting *Nelson v. City of Davis*, 685 F.3d 867, 877-78 (9th Cir. 2012).) After the OC spray was deployed, Plaintiffs, like everyone else in their group, were free to move, and in fact moved, north. The use of pepper spray did not restrict their movement. *Dundon v. Kirchmeier*, 2017 WL 5894552, at *18 (D.N.D. Feb. 7, 2017); *Black Lives Matter D.C. v. Trump*, 544 F.Supp.3d 15, 48-49 (D.D.C. June 21, 2021).

It is for this reason that Plaintiffs' reliance on cases where pepper spray resulted in the termination of freedom of movement is inapposite. Unlike *Dundon* or *BLM*, Plaintiffs' cases resulted in the individuals being restrained. *Jennings v. City of Miami*, 2009 WL 413110 (S.D. Fla. Jan. 27, 2009) and *Marbet v. City of Portland*, 2003 WL 23540258 (D. Or. Sept. 8, 2003)[2] both involved allegations that officers deployed pepper spray for the purpose of, and actually accomplished the termination of, the plaintiff's freedom of movement. Nor is Plaintiffs' reliance on *Laney v. City of St. Louis*, 56 F.4th 1153, 1156 (8th Cir. 2023) persuasive. In that case, the Eighth Circuit held that a short burst of pepper spray to repel a protestor from a police line was reasonable. The defendant did not raise a lack of seizure argument, but the court in its analysis relied on the purpose of the use of pepper spray in finding the action reasonable.

Plaintiffs alternatively fall back on the broader law enforcement plan for the evening, which constituted two parts, 1) a dispersal, and 2) if that was unsuccessful, a mass

---

[2] The procedural posture of these cases is also inapposite as the decisions involved motions to dismiss.

arrest. This argument fails for multiple reasons. First, this argument requires a level of generality that is absurd. Plaintiffs' claims are based on the use of OC spray to get them to leave the alcove when the line came upon them, not some amorphous plan that included the potential for a mass arrest. The proper inquiry focuses on the use of pepper spray against these specific Plaintiffs in this specific situation, not a general operational plan. Second, Judge Tunheim rejected a similarly broad argument in *Kaplan v. Harrington*, 2023 WL 1797872, at *8 (D. Minn. Feb. 7, 2023) holding that "having a plan on how to conduct mass arrests is not indicative that mass arrests will be conducted without justification." Having a plan for potential eventualities provides no insight into why Eck or Lockman deployed pepper spray **in this instance**.

Finally, Plaintiffs argue that because Eck and Lockman would have arrested Plaintiffs had they not dispersed, their intent was to arrest them. (Pls.' Mem. at 28.) But Defendants' testimony and actions that day indicate otherwise. They both testified that their intent was to move the group or arrest individuals as appropriate. (Lockman Dep. at 159, Eck Dep. at 163-64 ("We don't allow people to get behind our line. So if we'd have continued to move forward they would have been arrested at that point, if they would have stayed there.").) Supporting this statement is the fact that no one, whether press or otherwise, was arrested from this group. And the one member of the press who voluntarily gave himself up to Lockman was not pepper sprayed and released immediately upon confirmation of his press status.

There was no Fourth Amendment seizure, and Plaintiffs' claims grounded in excessive force must be dismissed.

4

B. **Defendants Are Entitled to Qualified Immunity.**

The use of pepper spray on Cole was reasonable under the totality of the circumstances, and there was no established law as of May 2020 that the use of pepper spray in this situation was unlawful. Plaintiffs do not meaningfully dispute that the use of pepper spray was appropriate as it related to non-journalists in the crowd. At most they argue that Defendants should have given the group more warning or used baton movements to get them to move. (Pls.' Mem. at 36-37.) This argument ignores 1) the group was given multiple dispersal warnings, 2) pepper spray was used specifically because Plaintiffs and members of their group were hiding, and 3) the spray provided law enforcement with the safest standoff distance. *Bernini v. City of St. Paul*, 665 F.3d 997, 1006 (8th Cir. 2012) (no excessive force when less lethal munitions used by officers who reasonably "believe[d] that a growing crowd intended to penetrate a police line and access downtown St. Paul.").

Instead, Plaintiffs argue it was incontrovertible Defendants should have known the individuals hiding in the alcove were "easily identifiable as journalists." (Pls.' Mem. at 32.) Hennessey-Fiske had no easily identifiable indicia of press status, and Cole had a hand-taped "T.V." on her vest in addition to the same type of gas mask, goggles, and helmet as other crowd members. No one who has viewed the videos and pictures of the event, including Plaintiffs, have identified the other individuals with them as press members. In one video, the individual wearing a press vest leaves the alcove upon the arrival of law enforcement and commands to move and subsequently, was not struck by pepper spray. (Dwyer Ex. 2 at 1:40-1:45.) While Plaintiffs claim they called out "press," they did so only *after* pepper spray had been deployed and they left the alcove. Finally, Plaintiffs' attempt

5

to dismiss the "potential threat" of allowing "unidentified individuals" behind a police line with "scare quotes" does not make the unrebutted testimony of this law enforcement necessity disappear. The cases most similar to this situation have found the use of pepper spray reasonable. *Bernini*, 665 F.3d at 1006; *see also Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1105 (8th Cir. 2004) (recognizing "the use of pepper spray ... was objectively reasonable" when officer reasonably believed "that he was in immediate danger"); *Laney*, 56 F.4th at 1156 (use of pepper spray to drive protestor away from police line constituted reasonable force); *Aldridge v. City of St. Louis*, 2022 WL 990643, at *14 (E.D. Mo. Mar. 31, 2022) (use of pepper spray to get individual to retreat not excessive force); *White v. Jackson*, 865 F.3d 1064, 1079 (8th Cir. 2017) (use of less lethal projectiles on individual who could have reasonably been seen as a member of a violent crowd when he approached a skirmish line is not excessive force).[3]

Additionally, Plaintiffs' excessive force claims fail because it was not clearly established that use of pepper spray to disperse individuals hiding in the alcove was unlawful. Plaintiffs instead argue, without any explanation, that Defendants' analysis relies on disputed facts. But relying only on the undisputed facts highlighted above, Defendants have identified numerous cases, including controlling law from this Circuit, holding the use of pepper spray and chemical munitions to disperse a crowd was not clearly established as of May 2020. *Qurashi v. St. Charles Cnty.*, 986 F.3d 831, 840 (8th Cir.

---

[3] Nor is Plaintiffs' reliance on *Ziegler v. City of St. Louis*, 2021 WL 4459747, at *9 (E.D. Mo. Sept. 29, 2021), availing. Unlike this case, that journalist *complied* with police instructions but was pepper sprayed anyway.

6

2021) (use of tear gas to disperse crowd not clearly established as a seizure); *De Mian v. City of St. Louis*, 625 F.Supp.3d 864, 873 (E.D. Mo. 2022) (use of pepper spray to disperse protestors not clearly established as a seizure); *Aldridge*, 2022 WL 990643, at *14 (use of pepper spray to disperse advancing protestors not a clearly established violation); *BLM*, 544 F.Supp.3d at 49 (use of batons, tear gas, flash-bang grenades, smoke bombs, and rubber bullets to disperse protestors not clearly established as a seizure).

Finally, there is no basis for a failure to intervene claim. One court in this Circuit has already granted summary judgment on a similar claim involving pepper spray for the reasons discussed above. *Brandy v. City of St. Louis*, 2022 WL 1604570, at *9 (E.D. Mo. May 20, 2022) (citing *Qurashi*, 986 F.3d at 840). And Plaintiffs' reliance on *Baude v. Leyshock*, 23 F.4th 1065 (8th Cir. 2022) is equally unavailing. In addition to being decided on a motion to dismiss, plaintiffs in *Baude* alleged officers observed misconduct, issued orders allowing the use of excessive force against a peaceful crowd, and encircled plaintiffs into a kettle at which point officers used chemical munitions. *Id.* at 1069. There are no facts in this case, disputed or otherwise, that support a similar failure to intervene claim.

All of Plaintiffs' claims related to excessive force should be dismissed.

**II.     FIRST AMENDMENT RETALIATION**

Plaintiffs believe that repeating the incantation "reporting is a protected First Amendment activity" will salvage their claim. While there is no dispute this mantra is correct, it does not address the contested issue in *this case*: whether Eck and Lockman deployed pepper spray **because** Plaintiffs are journalists. *Qurashi*, 986 F.3d at 837. Here, Plaintiffs' have presented nothing but supposition.

7

First, Plaintiffs claim it was obvious all members of the group they were in were media members. The picture they include on page 12 of their brief tells a different story. While some individuals may have some indicia of media status, many do not including the individual in the adidas jacket whom Plaintiffs acknowledged was not a journalist.



"If the response was driven not by 'animus' but by the defendant's understanding—however mistaken—of his official duties, then it was not 'retaliatory.'" *Mitchell v. Kirchmeier*, 28 F.4th 888, 896 (8th Cir. 2022); *Aldridge v. City of St. Louis*, __ F. 4th __, 2023 WL 4835007, at *3 (8th Cir. July 28, 2023) (no First Amendment retaliation when pepper spray used for crowd control and not targeted a specific protestor).

Second, Plaintiffs claim that because some members of law enforcement may dislike the media, Eck and Lockman share these sentiments. Both Defendants, however, disclaimed this position rendering the argument a red herring. Third, had Plaintiffs walked

north, they could have continued reporting as did other individuals. *See* https://www.youtube.com/watch?v=jqnyu4h72a8; https://www.youtube.com/watch?v=PLUW2Wz06Ws; (last accessed August 1, 2023). *Molina v. City of St. Louis*, 59 F.4th 334, 341 (8th Cir. 2023) (no First Amendment retaliation against individuals part of a group because retaliatory animus cannot be the driving force whenever officers act based on their "understanding—however mistaken—of [their] official duties," even if the mistake turns out to be "unreasonable"); *De Mian*, 625 F.Supp.3d at 871-72 (no First Amendment retaliation when no evidence use of pepper spray was because of speech); *Dundon*, 577 F. Supp. 3d at 1064-65 (no First Amendment retaliation when law enforcement reasonably believed group members were acting unlawfully).

Nor was the law on this issue clearly established. Neither of the cases Plaintiffs cite to claim press could ignore a lawful dispersal order were decided prior to May 2020. *Goyette v. City of Minneapolis*, 2021 WL 5003065 (D. Minn. Oct. 28, 2021); *Index Newspapers LLC v. City of Portland*, 480 F. Supp. 3d 1120 (D. Or. 2020). Plaintiffs have not identified, and Defendants have been unable to locate, any case placing Defendants on notice that press did not need to comply with a lawful dispersal order.

Finally, Plaintiffs' reliance on the *Goyette* decision is misplaced. *Goyette* was a class action involving allegations of misconduct during both the George Floyd and Daunte Wright protests and not only against MSP but other defendants as well. 2021 WL 5003065 at *2-3. The court made no specific findings regarding Defendants as it would relate to

9

this matter and did not even address the lack of clearly established law.[4] *See generally id.* In fact, the court did no qualified immunity analysis whatsoever. *Id.* There is no evidence Defendants targeted Plaintiffs because of their press status and the First Amendment claims (Counts III and parts of V) should be dismissed.

### III. SUPERVISOR LIABILITY

Plaintiffs' supervisory claim against Dwyer based on his personal involvement in the use of pepper spray on Cole is baseless. It is undisputed he never commanded anyone to deploy OC spray. It is undisputed he did not witness this happen. And it is undisputed that Dwyer authorized the use of force only if it was deemed necessary based on the situation, training, and MSP policy – a textbook failure to supervise type claim. In other words, the only facts related to direct participation by Dwyer are precisely the same as the allegations this Court previously held were insufficient to withstand a motion to dismiss. *Cole v. Does*, 571 F.Supp.3d 1033, 1044 (D. Minn. 2021) ("Nowhere in their complaint do Cole and Hennessy-Fiske explain how they know what Dwyer . . . said to the Doe defendants or provide any details about when or how Dwyer . . . authorized and approved of the Doe defendants' use of force against the journalists.").

Finally, the cases cited by Plaintiffs to support their claim against Dwyer are easily distinguishable. They are cases decided at the pleading stage and largely involve allegations supervisors observed the alleged unlawful activity, *Ziegler*, 2020 WL 709257,

---

[4] As one example of the case's inapplicability, the court, without citation to any law, noted that a dispersal order directing media to go to a specific location, something Plaintiffs insist should have been done here, likely violated the First Amendment. *Goyette*, 2021 WL 5003065, at *7.

at *5; *Keating v. City of Miami*, 598 F.3d 753, 767 (11th Cir. 2010), or evidence the supervisor prohibited action without explicit authorization. *Buck v. City of Albuquerque*, 549 F.3d 1269, 1287 (10th Cir. 2008). Instead, this case is most similar to *Molina*, where the supervisor gave an order to "use chemical munitions to disperse the crowd, but he had no notice that his lawful order was 'likely to result in a constitutional violation' or that his 'supervision [under the circumstances] w[as] inadequate.'" 59 F.4th at 344.

## CONCLUSION

Defendants' Motion for Summary Judgment should be granted.

Dated:  August 3, 2023

KEITH ELLISON
Attorney General
State of Minnesota

/s/ *Joseph Weiner*
JOSEPH WEINER
Assistant Attorney General
Atty. Reg. No. 0389181

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 757-1431 (Voice)
(651) 297-4139 (Fax)
joseph.weiner@ag.state.mn.us

ATTORNEY FOR DEFENDANTS